1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

8    JUSTIN LEWIS, *et al.,*

9         Plaintiffs,                                   Case No. 2:07-CV-01109-KJD-LRL

10   v.                                                 **ORDER**

11   STATE OF NEVADA, *et al.*,

12        Defendants.

13

14        Presently before the Court is Defendants Clark County, Clark County Department of Family

15   Services, Clark County Child Protective Services, Clark County Child Haven Foster Care Services,

16   and Terri Campbell's (referred to jointly herein as "Clark County") Motion for Summary Judgment

17   (#113).  Cross-Claimant Maple Star Nevada ("Maple Star") filed a Response in Opposition (#120) to

18   which Clark County filed a Reply (#121).

**I. Facts and Procedural Background**

19

20        This case arises from the accidental death of four-month-old Keiley Lewis, who was placed

21   into the care of Sandra and Robert Holihan by Clark County.[1]  Maple Star is a child-care services

22   corporation that contracted with Clark County to provide emergency shelter care services on

23

24        [1]Sandra and Robert Holihan, Maple Star, the State of Nevada, and Clark County all settled with Plaintiffs;
     accordingly, the Holihans and the State of Nevada are no longer parties to this case. The only remaining litigation
25   involves Maple Star and Clark County regarding the payment of defense costs/fees that Clark County accrued in the
     litigation surrounding Keiley's death.  (See #111, 5:14–20, 6:18–20)

26
                                                        1

1  behalf of Keiley Lewis.  (See #113, Attach. 1, 1)  However, before Clark County assented to an

2  agreement with Maple Star, it required Maple Star to obtain liability and workers compensation

3  insurance certificates and to include Clark County as an additional insured under their insurance

4  policy.  (See #112 at 12.)  Consequently, Maple Star went to Assurnet, an insurance broker, to

5  procure the aforementioned insurance certificates.  (See #112 at 14.)  Assurnet allegedly issued the

6  insurance certificates listing Clark County as an additional insured under Maple Star's insurance

7  policy.  (Id.)  Subsequently, Clark County entered into a contract with Maple Star.  The contract

8  contained, in pertinent part, the following provisions:

9        **I. F.** . . . PROVIDER [Maple Star] shall be and remain liable in accordance with the terms of
          this Contract and applicable law for all damages to OWNER [Clark County] caused by
10        PROVIDER'S performance or failure to perform under this Conract.
          . . . .

11
          **VII. E.  Insurance.**  The PROVIDER shall obtain and maintain the insurance coverages
12        required in Exhibit B incorporated herein by this reference.  The PROVIDER shall comply
          with the terms and conditions set forth in Exhibit B and shall include the cost of the insurance
13        coverages in their prices.

14        **VII. F.  Indemnity.**  The PROVIDER does hereby agree to defend, indemnify, and hold
          harmless the OWNER and the employees, officers and agents of the OWNER from any
15        liabilities, damages, losses, claims, actions or proceedings, including, without limitation,
          reasonable attorneys' fees, that are caused by the negligence, errors, omissions, recklessness
16        or intentional misconduct of the PROVIDER or the employees or agents of the PROVIDER
          in the performance of this Contract.

17
    (See # 113, Ex. A at 1, 6.)  Exhibit B contains the following important provisions:
18
          **B. 3.  Owner Coverage:**  The [OWNER], its officers and employees must be expressly
19        covered as additional insureds except on workers' compensation insurance coverages.  The
          PROVIDER'S insurance shall be primary as respects the [OWNER], its officers and
20        employees.

21        **B. 4.  Endorsement/ Cancellation:**  The PROVIDER'S general liability insurance policy
          shall be endorsed to recognize specifically the PROVIDER'S contractual obligation of
22        additional insured to [OWNER] and must note that the [OWNER] will be given thirty (30)
          calendar days advance notice by certified mail "return receipt requested" of any policy
23        changes, cancellations, or any erosion of insurance limits.
          . . . .

24
          **B. 11.  Failure to Maintain Coverage:** If the PROVIDER fails to maintain any of the
25        insurance coverages required herein, [OWNER] may withhold payment, order the

26

PROVIDER to stop the work, declare the PROVIDER in breach, suspend or terminate the Contract, assess liquidated damages as defined herein, or may purchase replacement insurance or pay premiums due on existing policies. [OWNER] may collect any replacement insurance costs or premium payments made from the PROVIDER or deduct the amount paid from any sums due the PROVIDER under this Contract.
. . . .

**B. 13.  Damages:** The PROVIDER is required to remedy all injuries to persons and damage or loss to any property of [OWNER], caused in whole or in part by the PROVIDER, their subcontractors or anyone employed, directed or supervised by PROVIDER.

(See #113, Ex. B at 1–2.)

When litigation surrounding Keiley's death commenced against Clark County, the County tendered the defense of being insured under Maple Star's insurance policy.  (See #119 at 4:1–2.) However, Maple Star's insurance provider, Tudor Insurance, refused coverage to Clark County as an additional insured, challenging the authenticity of the insurance certificate issued by Assurnet.[2]  As a result, Clark County was obliged to defend itself in the lawsuit, accruing approximately $200,000 in defense costs and attorneys fees.  (See #121 at 19:24.)  Consequently, Clark County brought a cross claim against Maple Star, averring that Maple Star breached its contractual responsibility to acquire the necessary insurance—specifically, to obtain additional insured status for Clark County—to absolve Clark County from certain liability.  (See #112 at 3:27–28, 4:1–2.)  Additionally, Clark County brings the present Motion asserting that summary judgment is appropriate here because no genuine issues of material fact exist as to Maple Star's breach of contract.

**II. Standard for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ.

---

[2]Tudor Insurance confirmed that Assurnet never provided it, nor its wholesale insurance broker, Child Welfare Insurance, with a copy of the insurance certificate from Assurnet.  Furthermore, Tudor averred that even if it had received a copy of the certificate, the policy number on the certificate was non-inclusive; meaning that the listed policy number included coverage from April 1, 1999 to April 1, 2001.  However, Keiley died approximately three (3) years after the expiration of the aforementioned coverage, thereby rendering the policy invalid.  (See #112 at 4:24–28, 5:1–13.)

3

1   P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the

2   initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at

3   323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

4   genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

5   587 (1986); Fed. R. Civ. P. 56(e).

6        All justifiable inferences must be viewed in the light most favorable to the nonmoving party.

7   See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere

8   allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or

9   other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial.  See

10  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual

11  issues of controversy in favor of the non-moving party where the facts specifically averred by that

12  party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S.

13  871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th

14  Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of

15  fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere speculation,

16  conjecture, or fantasy.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986).

17  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of

18  material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061

19  (9th Cir. 2002).

20       Summary judgment shall be entered "against a party who fails to make a showing sufficient to

21  establish the existence of an element essential to that party's case, and on which that party will bear

22  the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a

23  reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

24

25

26

1  **III. Analysis**

2      **Breach of Contract**

3      Under Nevada contract theory, "[t]he question of the interpretation of a contract when the

4  facts are not in dispute is a question of law." Grand Hotel Gift Shop v. Granite St. Ins., 839 P.2d

5  599, 602 (Nev. 1992).  There are two primary doctrines of contractual interpretation: (1) the court

6  shall effectuate the intent of the parties determined in the light of the surrounding circumstances if

7  not clear from the contract itself; and (2) ambiguities are to be construed against the party who

8  drafted the agreement.  See Musser v. Bank of America, 964 P.2d 51, 52 (Nev. 1998).  However,

9  "[i]n interpreting a contract . . . a contract that is clear on its face from the written language . . .

10  should be enforced as written." Canfora v. Coast Hotels & Casinos, Inc., 121 P.3d 599, 603 (Nev.

11  2005).  Furthermore, "[e]very word must be given effect if at all possible." Id. at 54, (quoting Royal

12  Indem. Co. v. Special Serv., 413 P.2d 500, 502 (Nev. 1966)).

13      Clark County avers that there are no genuine issues of material fact as to the existence of (1)

14  Maple Star's breach of contract to provide valid insurance to Clark County, (2) Maple Star's breach

15  of contract to defend and indemnify Clark County, and (3) damages Clark County suffered as a result

16  of Maple Star's breach.  Consequently, Clark County asserts that summary judgment is appropriate at

17  this time.  The Court examines each in turn and for the following reasons grants summary judgment

18  for Clark County.

19      **(1) Insurance**

20      Maple Star avers that issues of fact exist regarding whether they owed coverage to

21  Clark County Department of Family Services ("DFS"), Clark County Child Protective Services

22  ("CPS"), Clark County Child Haven Foster Care Services ("Child Haven"), and Terri Campbell, or

23  just to Clark County.  The Court disagrees.  As Clark County has correctly stated, DFS, CPS, and

24  Child Haven are legal entities of Clark County itself, and, therefore, are owed the same coverage that

25  Clark County is owed.  See Schneider v. Elko County Sheriff's Department, 17 F. Supp. 2d 1162,

26

1  1164–65 (D. Nev. 1998).  Moreover, as evidenced by the express language of the contract, the

2  agreement (including insurance coverage) was made "by and between . . . Maple Star . . . [and] the

3  OWNER [Clark County] *thru its Department of Family Services (DFS)*."  (See #113, Attach. 1, 3)

4  [Emphasis added]  This demonstrates that Maple Star clearly intended to contract with Clark County

5  *and* with DFS *and*, consequently, with all of the subsidiary services offered under DFS, including

6  Child Haven and CPS.  (See #121, Attach. 1, 2–3)  Finally, Terri Campbell is also owed coverage

7  based on her status as an employee, under section 3 of exhibit B regarding "Owner Coverage."  See

8  supra p. 2:18.

9         Maple Star also avers that issues of fact exist regarding whether it fulfilled the contract with

10  Clark County by providing them with the certificate of liability insurance ("the Certificate").  The

11  Court disagrees.  The "written language" of the contract clearly shows that Maple Star was to provide

12  general liability insurance to Clark County.  Canfora, 121 P.3d at 603.  See also supra p.3:18–22.

13  Maple Star did not fulfill the contract by simply giving Clark County the Certificate—a document

14  which, ironically, appears to be invalid anyway.  While true that Clark County accepted the document

15  and declared it to be "in an acceptable form," it is also true that the Certificate contained language

16  stating that "[it] does not amend, extend, or alter the coverage afforded by the policies below."  (See

17  #119, Ex. 3; see also id. at Ex. 2)

18         Moreover,  Maple Star attests that Assurnet is responsible for the invalid Certificate.

19  However, even if true, Maple Star is still responsible—under the Contract—for the "negligence,

20  errors, omissions, recklessness or intentional misconduct of the . . . employees or agents of the

21  PROVIDER."  See supra p.2:13-16.  Therefore, Maple Star is still responsible for Assurnet's alleged

22  negligence being that Assurnet is an "agent of the PROVIDER."  Id.  Most importantly, the essence

23  of the insurance provision of the contract was for Maple Star to insure Clark County from

24  liability—not just to provide them with the Certificate—and Maple Star failed to do this.

25

26
                                        6

1   Accordingly, the Court finds no genuine issue of material fact as to the existence of Maple Star's

2   breach of contract.

3   **(2) Defense and Indemnification**

4   Clark County avers that there are no issues of material fact regarding Maple Star's breach of

5   the defend and indemnify provision of the contract.  The Court agrees.

6   > "The duty to defend contains . . . [the] right to control litigation against the insured . . . The
   > right to control litigation creates the duty to defend the insured from lawsuits within the
7   > insurance policy coverage . . . [and] a primary insurer's right and duty to defend attaches
   > when the insured tenders defense of the lawsuit to the insurer.

8
9   See Allstate v. Miller, 212 P.3d 318, 324 (Nev. 2009)(citing Heredia v. Farmers Ins. Exchange, 228

10  Cal.App.3d 1345, 279 Cal.Rptr. 511, 519-20 (1991); 14 *Couch on Insurance* 3d §§ 200:1, 203:1

11  (2005)).

12  Pursuant to the contract, Maple Star agreed to "defend . . . the OWNER and the employees,

13  officers and agents of the OWNER" from any lawsuits caused by Maple Star's (or its agents')

14  negligent, errant, reckless or intentional behavior.  (See supra p.2:13–16.)   Allstate confirms the duty

15  that Maple Star had to defend Clark County "from lawsuits within the insurance policy coverage."

16  Allstate, 212 P.3d at 324.  However, whether it be under its contractual duty or the implied duty from

17  case law,  Maple Star has failed to defend Clark County.

18  Furthermore, Clark County correctly asserts that the duty to defend and the duty to indemnify

19  are separate, distinct duties.  See Allstate v. Miller, 212 P.3d 318, 324 (Nev. 2009)(citing Crawford

20  *et al.*, v. Weather Shield Mfg., Inc., 187 P.3d 424, 432 (Cal. 2008))(holding that "[a] duty to defend

21  another . . . is . . . different from a duty [to indemnify] expressed simply as an obligation to pay

22  another, after the fact, for defense costs the other has incurred in defending itself.")  Therefore,

23  Maple Star's argument that the duty to defend and the duty to indemnify are the same is

24  unpersuasive.  (See #120 at 25–27.)

25

26
                                            7

**(3) Damages**

An indemnitor "has the obligation . . . to accept and assume the indemnitees active defense against claims encompassed by the indemnity provision.  Where the indemnitor has breached this obligation, an indemnitee who was thereby forced, against its wishes, to defend itself is entitled to reimbursement of the costs of doing so."  See Crawford et al., 187 P.3d at 432.  It is undisputed that Clark County was forced to defend itself in the lawsuit concerning Keiley Lewis' death after their tender to defense—under what they thought was a valid insurance policy—was rejected by the insurance company.  As a result, Clark County has allegedly accrued $200,000 in attorneys' fees/defense costs.  Under Crawford, Clark County should be "entitled to reimbursement of the costs of" defending itself.  Whether Clark County in fact accrued $200,000 in attorneys' fees/defense costs or some other number is not important here.  What is important is that Clark County is eligible to be reimbursed for the costs, and such costs will be determined at a later time.

**III. Conclusion**

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendants Clark County, Clark County Department of Family Services, Clark County Child Protective Services, Clark County Child Haven Foster Care Services, and Terri Campbell's (referred to jointly herein as "Clark County") Motion for Summary Judgment (#113) is **GRANTED**.

DATED this 28th day of September 2010.

_____
Kent J. Dawson
United States District Judge